The second case, number 124642, United States v. Deleon-Ramirez? Ramirez, yes. Yes, Your Honor. Good morning. Good morning. May it please the Court, Nicholas Anakis for Mr. Deleon-Ramirez. The sentence imposed on Mr. Deleon-Ramirez is an outlier. It is three times the top of his guideline range. There's been only one other defendant convicted of illegal reentry to be sentenced to three times the top of their guideline range. That defendant was a member of the MS-13 criminal gang, and the sentence was imposed specifically to deter other members of MS-13 from illegally entering the country. The 32-month upward variance here is also the highest upward variance in terms of months alone imposed on a defendant convicted of 1326b1. I think you make, I thought it was a very interesting and a provoking argument. And when you compare variances, you have an argument. But when you compare actual sentences, it seems pretty much in line with the sentence given in other similar cases. Yes, Your Honor. The sentence of 48 months is about the mid-range for defendants convicted of 1326. But I think that in reviewing the sentence, the degree of the variance has to be taken into account. Gall instructs that... But so does the sentence. Absolutely, Your Honor. And I think that this sentence would be an outlier, though, that although the sentence is mid-range, the variance itself is extreme. It is at the end. And I think that has to be considered. The guidelines have to have a purpose. A very unusual fact situation in that you have this prior experience with the district judge, who I guess remembered the case, God bless him, or was government instrumental in his remembering the case? Yes, Your Honor. It is a unique fact pattern in terms of the judge's recognition of the defendant. However, I would contend that in some ways it's not unique. I can't point to another case where a defendant comes against the same judge and the judge says, I've warned you before. But I don't believe that means that this is especially unique. I think rather it means that it's especially common. Frequently when defendants, and especially in 1326 cases, appear in front of the court for sentencing, the court warns them and the defendant apologizes. So for that reason, I don't think that is a distinguishing factor in Mr. DeLeon Romero's case. Do you think it's a good or bad factor that the judge remembers the defendant? I think for Mr. DeLeon Romero it was a bad factor. But the mayor says she thinks it's good or bad generally that a judge remembers that he's had prior experience with someone. You think that's bad? I think it can go. I think your client regrets that the judge remembered, but do you think that's bad? The judge remembers that he's dealt with somebody before. Your Honor, I think I'd like to revise my position. I think it could go either way. And many times knowing the client, knowing the defendant, and knowing their personal background and knowing and being able to look to see how they progress between appearances. It seems to me unless there's some kind of extrajudicial information that the judge shouldn't have or should recuse himself, which is not the case here, why is it bad for the judge to have more knowledge rather than less knowledge? Well, Your Honor, I think there's- Just as a general principle. I'm just asking. Then I'll let you go back to your argument. I agree with you, Your Honor. I think the judge having more knowledge is a good factor. I would like to point out, though, that- It wasn't just-I'm sorry. It wasn't just that the defendant apologized, as the majority of defendants do, but the first time he was before the court for sentencing, he apologized and also said he was going to take his family and leave the country and not come back. The second time he apologized and said, well, now I'm going to take my family and leave the country and not come back. So isn't the judge entitled at that point to say enough is enough? No, Your Honor. I think that-well, maybe. I think to a degree the judge would obviously have discretion to impose a variance of some sort given the repeated offenses. However, there has to be a limitation to that, a limitation to the variance and how many times the defendant has appeared in front of the judge and been convicted of illegal reentry. For example, there are other defendants with more numerous illegal reentries. And I can point to a case where the judge, although doesn't reference a previous warning, does reference the defendant's previous promise, and that was in United States v. Tisnado. In that case, the defendant the second time around, the judge imposed a sentence only four months above the previous sentence. So I think absolutely the judge could consider this, but I would like to emphasize again that in fact these fact patterns in terms of the warning and the promise not to return are in fact quite common, and our contention would be that while a variance could be reasonable, an outlier variance is not reasonable. I think that maybe one way to think about this case is think about there's three types of criminal cases typically along a bell curve. You have your typical mine run case, which is the majority of defendants, and as you move out on the curve you have deviations due to aggravating or mitigating factors. And at the end you have the outliers. And while in the middle you have a deviation, that deviation could be attributed to previous convictions for illegal reentry and previous promises to the court, but that wouldn't justify an outlier sentence. And that's really what we have here. We have an outlier sentence, a variance the highest number of months imposed on a defendant convicted of V1, and a sentence that's three times the top of his guideline range. And because of that, the court's justification is not sufficient for that sort of sentence. It's arbitrary and abusive discretion for defendants with similar records, found guilty of similar conduct, to be given vastly different sentences, to be given outlier sentences and non-outlier sentences. And in terms of the uniqueness of the defendant, I would once again like to point out that Mr. DeLeon Ramirez's criminal history pales in comparison to a lot of other defendants who have convictions for violent crimes, convictions for drug crimes, and receive substantially smaller variances. Additionally, other defendants who have substantially more convictions for... You want to say anything about supervised release? Yes, sir. Our contention is that it was plain error for the district court to impose a term of supervised release because of the instruction of the guidelines that supervised release should not be imposed on a defendant who is going to be deported. And given that guideline's commentary, it was plain error to impose that. This court has recognized that the... But the guideline doesn't say it may not be imposed. That's correct, Your Honor. It said ordinarily not imposed. That's correct, Your Honor. But our contention would be that... When do you think it may be imposed and under what circumstances? When there's going to be a deportation. There must be some circumstances in which supervised release would be allowed when there's a deportation. Yes, Your Honor. I agree that there would be unique... What would be one? When there's a chance the person might come back. I don't know, Your Honor. I think it would have to be a very... Well, doesn't it make sense that if the person's likely to come back, you'd put supervised release over them to help deter them from coming back? May I ask? And how many times had your client entered the country illegally? Six times, Your Honor. Does that seem like that's maybe somebody that might come back, especially after his promises several times when he was before the court? Yes, Your Honor. I think that's a reasonable assumption. And didn't the court say he was trying to figure out something to deter your client from coming back? Yes, Your Honor. Didn't supervised release at least look like an effort to deter your client? Yes, Your Honor. I think that that's a reasonable assumption, and our contention would be strictly based on the guidelines instruction that it shouldn't ordinarily be imposed, that because Mr. DeLeon-Ramirez is not unique and is not an outlier client, in comparison to other clients who have substantially more reentries, that supervised release would be inappropriate. If the court has no other questions, I'll answer anything on rebuttal. Thank you very much. May it please the Court. My name is Michael Moore, and I represent the United States in this matter. The issues raised in this appeal can simply be resolved by reference to the appropriate standards of review and application of those appropriate standards mandate that this court affirm the district court's sentence in every respect. In determining whether the district court's sentence, 48 months incarceration, was unreasonable, the court applies an abuse of discretion standard. In imposing this sentence, the district court took into account conduct, much of which was unadjudicated, and it consisted of five reentries prior to the reentry that led to the defendant's conviction that led to this appeal, and also took into account the defendant's prior encounter with the district court, the same judge who was sentencing him in the incident case. And one thing that's significant that wasn't covered during counsel's argument previously was that not only did the defendant promise to return, but the district court educated the defendant very, very carefully on its methodology in imposing the sentence. It's an education that very, very few defendants get from a district court judge at sentencing. The district court said that it was considering imposing a two-year sentence, which was the statutory maximum for that offense, said that in light of the defendant's background, much of the same background that he relies on here in terms of his family situation in Guatemala and personal history, and that in light of that he was only going to impose a seven-month sentence. But the district court judge then went on to warn the defendant that the next violation would result in very, very, very harsh punishment. So the district court in sentencing on this offense took into account these various prior reentries and the prior encounter that he'd had with the court, all of which go to nature and circumstances of the offense, history and characteristics of the defendant, respect for the law, just punishment, and perhaps most importantly, adequate deterrence. So having very, very carefully considered those things, it then decided to vary upward to a sentence of 48 months. Now with respect to the proportionality type argument that was offered by counsel previously, that argument was categorically rejected in Gall, and this court recognized in the Evans case that that sort of mathematical proportionality type of analysis is inconsistent with an abuse of application of an abuse of discretion standard. And the Supreme Court in Gall noted that there are a lot of, as the Supreme Court put it, infirmities in application, some of which have to do with the fact that, for instance, where there's a low guideline range, any departure is going to be 100 percent departure. And moreover, there are problems with assigning weights to the various things or trying to assign mathematical weights to the various things that courts consider. For instance, in this case, it would be highly problematic to try to assign some specific weight to the five prior reentries or assign specific weight to the comments that were made by the district court. Instead, the district court simply took all those things into account. They went into the mix and they were weighed. With respect to the argument about these disparities, first I would note that the statistical evidence that the defendant relies on and these other cited cases, these were never raised before the district court. The district court never had a chance to consider the fact that these other sentences had been imposed, so the court can hardly be accused of having abused its discretion by not considering arguments that weren't made. But more importantly, there was a system that took into account the notion of these outlier cases and tried to minimize them. It was called the Mandatory Guidelines Scheme. The Supreme Court blew it up when it found them unconstitutional in the Booker case. And the Supreme Court went on to recognize in Kimbrough that a byproduct of finding the Mandatory Guidelines Scheme unconstitutional was that there was going to be more disparity. But in any event, for the reasons that I've noted previously, the disparities here were actually warranted because of the factors with respect to the prior reentries, prior history of reentries, and the warnings that had been given to Mr. Dalien by the court during his previous sentencing certainly distinguished this case. As to supervised release, let me ask you this. What do we make of the guideline statement that ordinarily the district court should not impose a term of supervised release where the defendant is a portable alien? Well, the operative term there is ordinarily, Your Honor. But what do we do of that statement in non-binding guidelines? Do you understand my question? It didn't bind the court before, did it? It did not bind the court before. When the guidelines were mandatory, it didn't bind the court, correct? Yes, Your Honor. So what does it do now? It still doesn't bind the court. Well, I know that. I think that's the best answer I can. Well, I know that, but it can't. If it didn't bind the court when the guidelines were mandatory, what does it do when the guidelines are advisory? Is this import lessened? I'm just asking. I don't know that it's lessened, but it's certainly not strengthened. And in any event, in this instance, you've got implicit findings with respect to concerns about deterrence that certainly justified the imposition of a three-year period of supervised release. I mean, given all of the comments that the court made that were geared towards the 48-month sentence. Do you think the court's comments about deterrence in this situation makes the case for the supervised release? Yes, Your Honor. You know, I'm actually a little surprised that the government's making this argument in these tough economic times, because I read somewhere that these supervised release costs, I think it was in some literature put out by the judiciary, so it must be true, that these are huge costs that we're trying to lessen. I guess the Justice Department hasn't signed on to that theory. Well, in this instance, presumably, Mr. De Leon is going to be removed from the United States. So what difference does this make? Well, it makes, it provides for an additional sanction. If he comes back during a supervised release period, he could end up with a statutory maximum of 24 months if he appears before Judge Pan on a supervised release violation for reentering the country. But there's no, again, presumably, if he is removed from the United States, as he likely will be, there won't be any supervision costs incurred. So it's real unlikely. There's no interim time period between the, you know, because often these immigration cases, there is a period of time where the person is here, and you don't understand exactly why the immigration authorities haven't acted, but they didn't. So during that period, a year or two, there would be a presumably supervised release cost. I don't think that a person situated like Mr. De Leon would be released from prison and go on supervised release. I believe he would be removed from the country. He would go into ICE custody as soon as he was, as soon as he was finished serving his sentence and would be removed. I interrupted. No, I was going to, I was going to say, I was going to say, isn't it true? It would just provide another sanction. So if ever he were called in the U.S. again, during that time period, and I'm sure one of the conditions would be not returning or violating the law or returning, he wouldn't be charged with a criminal offense and have all that before he's sentenced. It would just be a violation of supervised release based on preponderance of the evidence. And then the judge could act on that. That's correct, Your Honor. I thought that maybe Judge Mops was going to go, if there is a trend or an announcement toward some kind of amnesty or whatever you call it, letting people stay, why, why are you still prosecuting cases? I thought that was going to be the question on people who, on trying to deport people who I thought, I thought we can't deport everybody. Well, Your Honor, I think we would have to speculate about what may or may not happen with respect to immigration reform. But, but, but, you know, maybe the disjustice department is still trying to push people out of the country. Well, I think at this point, we're still in a posture where we're enforcing the law as it's written, which is what we should be doing. Okay. If the panel has no other questions, I would simply ask the court to affirm the district court sentence. Okay. Thank you. Your Honor, I just have one brief point. Let me ask this. Do you anticipate that your client would be released from prison, allowed to stay in the country before he is deported? Or do you think he'd go straight from his, any imprisonment time that he would have to straight to deportation? My understanding is he would probably go into ICE custody and then, and then straight. He would never leave custody between the time he's taken into prison and the time he's deported. He would never leave custody. I believe that's correct, Your Honor. But I can't say for certain that that's, that's the case. Mistakes can be made. Yes, Your Honor. And your client's hoping one will be. The point I would like to make is responding to the government's point about Gaul and the mandatory idea of the analysis here. And really today, all I'm asking is for this court to apply exactly what it did in Abu Ali. And I would like to point there that the sentence was also not, not the extreme end. This court looked at that sentence, compared the sentence, and then decided that it was substantially unreasonable in comparison to other defendants. I think that's what we're precisely asking the court to do today is do that sort of comparison, see the sentence as an outlier and then conclude that it's substantively unreasonable. If the court has no other questions, we ask that you vacate. Thank you very much, Your Honor. We will come down and greet the lawyers and then go directly to the next case.
judges: Diana Gribbon Motz, Dennis W. Shedd, Stephanie D. Thacker